**No. 25-30436**

# United States Court of Appeals
# For the Fifth Circuit

Brock P. Boudreaux; Khaled A. Barake; Kiel D. Crabtree; Michael Ainsworth; Christopher J. Lindley; et al,

Plaintiffs - Appellants

v.

Schlumberger Technology Corporation,

Defendant - Appellee

On Appeal from the United States district court for the
Western District of Louisiana, Lafayette Division
Civ. A. No. 6:14-CV-02267-RRS-CBW

## APPELLANTS' OPENING BRIEF

Michael A. Josephson
JOSEPHSON DUNLAP LLP
11 Greenway Plaza, Ste. 3050
Houston, Texas 77046
Telephone: (713) 352-1100

Richard J. (Rex) Burch
BRUCKNER BURCH PLLC
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Telephone: (713) 877-8788

Kenneth W. DeJean
LAW OFFICES OF KENNETH W. DEJEAN
P.O. Box 4325
Lafayette, Louisiana 70502
Telephone: (337)-235-5294

**Attorneys for Plaintiffs-Appellants**

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification of recusal:

| **Appellees:** | **Counsel for Appellees:** |
|---|---|
| Schlumberger Technology Corporation | Samuel Zurik of<br>Kullman Firm New Orleans, LA |
| Schlumberger Technology Corporation | Robert Lombardi of<br>Kullman Firm New Orleans, LA |
| Schlumberger Technology Corporation | Bryan Bowdler of<br>Kullman Firm New Orleans, LA |

| **Appellants:** | **Counsel for Appellants:** |
|---|---|
| Brock P. Boudreaux; Khaled A. Barake; Kiel D. Crabtree; Michael Ainsworth; Christopher J. Lindley; et al, | Richard “Rex” Burch of<br>Bruckner Burch PLLC<br>Houston, TX |
| Brock P. Boudreaux; Khaled A. Barake; Kiel D. Crabtree; Michael Ainsworth; Christopher J. Lindley; et al, | Michael Josephson of<br>Josephson Dunlap, L.L.P.<br>Houston, TX |
| Brock P. Boudreaux; Khaled A. Barake; Kiel D. Crabtree; Michael Ainsworth; Christopher J. Lindley; et al, | Kenneth W. Dejean<br>P.O. Box 4325<br>Lafayette, Louisiana 70502 |

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: */s/ Rex Burch*
Richard J. (Rex) Burch
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788

Michael A. Josephson
JOSEPHSON DUNLAP LLP
11 Greenway Plaza, Suite 3050
Houston, TX 77046
Tel: (713) 352-1100

Kenneth W. DeJean
LAW OFFICES OF KENNETH W. DEJEAN
P.O. Box 4325
Lafayette, Louisiana 70502
Telephone: (337) 235-5294

**Attorneys for Plaintiffs-Appellants**

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would be helpful to the Court.

This appeal involves the Fair Labor Standards Act's "salary basis" test. After the lower court ruled, both the Supreme Court (in *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39 (2023)) and this Court (in *Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712 (5th Cir. 2024)) issued relevant precedent. The Supreme Court recognized employers would guarantee a minimal "salary" "in a heartbeat if doing so eliminated the need to pay overtime." *Helix*, 598 U.S. at 61. But the salary basis test prevents that sort of avoidance. As this Court explained, "*Helix* and sections 602(a), 604(a), and 604(b) require courts to take a hard look at whether a purported 'salary' truly compensates employees for a week's worth of work or, instead, provides an artificial distinction between a salary and additional compensation." *Gentry*, 102 F.4th at 725.

Nonetheless, the parties disagree regarding the controlling framework. In another, post-*Gentry* decision, the Western District of Texas rejected Schlumberger's argument with respect to the same position—Directional Drillers—involved in this case. *See Guilbeau v. Schlumberger Tech. Corp.*, 719 F. Supp. 3d 702, 718 (W.D. Tex. 2024); *see also Guilbeau v. Schlumberger Tech. Corp.*, No. SA-21-CV-0142-JKP-ESC, 2025 WL 1213026, at *4–10 (W.D. Tex. Apr. 25, 2025), appeal pending, Case No. 25-50594 (5th Cir. 2025). In its own appeal, Schlumberger requested oral argument.

A substantive discussion of *Helix*, *Gentry*, and the proper application of 29 C.F.R. § 541.602(a) & § 541.604 would be helpful to the Court.

## TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS** .......... i
**STATEMENT REGARDING ORAL ARGUMENT** .......... i
**JURISDICTIONAL STATEMENT** .......... 1
**STANDARD OF REVIEW** .......... 1
**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW** .......... 2
**STATEMENT OF THE CASE** .......... 3
**SUMMARY OF THE ARGUMENT** .......... 9
**ARGUMENT** .......... 11

**A. A Jury Could Find Schlumberger Didn't Pay on a "Salary Basis."** .......... 11
1. Schlumberger's Must Prove It Paid on a "Salary Basis." .......... 11
2. The Two, Non-Overlapping Paths to Compliance with the "Salary Basis" Test — § 602(a) and § 604(b). .......... 12
a) Under § 602(a), the Alleged "Salary" Must Cover a "Week's Worth of Work" (It Must Be the "Full Salary for the Week"). .......... 13
b) Section 604 Applies to "Salary Plus Extras" Pay Plans. .......... 16
c) Section 604(b) Confirms a Salary Paid on a "Weekly Basis" Covers All Time Worked in a Workweek. .......... 19
d) A Token "Salary" Doesn't Meet Either of Helix's Paths to Compliance with the "Salary Basis" Test. .......... 20
3. Schlumberger Failed to Comply with Either § 602(a) or § 604. .......... 22
a) Schlumberger Didn't Pay Appellants a "Weekly-Rate." .......... 22
b) A Jury Could Find Schlumberger Fails the "Reasonable Relationship" Test Under § 604(b). .......... 23
c) Other Pre- and Post-Helix Cases Do Not Support the Lower Court's Decision. .......... 26

**B. This Court Should Reverse (or Vacate) and Remand.** .......... 29
**C. Regardless, the Statute of Limitations Should Be Tolled.** .......... 33

**CONCLUSION** .......... 36

# TABLE OF AUTHORITIES

## Cases

*Alvarez v. NES Glob. LLC*,
709 F. Supp. 3d 284 (S.D. Tex. 2023) .......... 19
*Anani v. CVS RX Servs., Inc.*,
730 F.3d 146 (2d Cir. 2013) .......... 26, 27, 28
*Atkins v. Propst*,
No. 20-11008, 2022 WL 24504 (5th Cir. Jan. 3, 2022) .......... 34
*Bongat v. Fairview Nursing Care Ctr., Inc.*,
341 F. Supp. 2d 181 (E.D.N.Y. 2004) .......... 24
*Brock v. Claridge Hotel & Casino*,
846 F.2d 180 (3d Cir. 1988) .......... 10, 24
*Campbell v. City of Los Angeles*,
903 F.3d 1090 (9th Cir. 2018) .......... 34
*Castillo-Correa v. Barr*,
796 F. App'x 846 (5th Cir. 2020) .......... 30
*DeMarco v. United States*,
415 U.S. 449 (1974) .......... 31
*Elizondo v. Parks*,
254 F. App'x 329 (5th Cir. 2007) .......... 30
*Gentry v. Hamilton-Ryker IT Sols., L.L.C.*,
102 F.4th 712 (5th Cir. 2024) .......... passim
*Goudeau v. Nat'l Oilwell Varco, L.P.*,
793 F.3d 470 (5th Cir. 2015) .......... 1
*Gray v. Fid. Acceptance Corp.*,
634 F.2d 226 (5th Cir. 1981) .......... 34
*Greinstein v. Granite Servs. Int'l Inc.*,
No. 23-10781, 2024 WL 3771455 (5th Cir. Aug. 13, 2024) .......... 30
*Guilbeau v. Schlumberger Tech. Corp.*,
719 F. Supp. 3d 702 (W.D. Tex. 2024) .......... 6
*Halferty v. Pulse Drug Co.*,
821 F.2d 261 (5th Cir.) .......... 35
*Halle v. W. Penn Allegheny Health Sys. Inc.*,
842 F.3d 215 (3d Cir. 2016) .......... 34
*Hebert v. FMC Techs., Inc.*,
No. 22-20562, 2023 WL 4105427 (5th Cir. June 21, 2023) .......... 27, 28
*Helix Energy Sols. Grp.,. Inc. v. Hewitt*,
598 U.S. 39 (2023) .......... passim

*Hewitt v. Helix Energy Sols. Grp., Inc.*,
15 F.4th 289 (5th Cir. 2021)....................passim
*Hodgson v. Behrens Drug Co.*,
475 F.2d 1041 (5th Cir. 1973).................... 35
*Jackson v. Cal-W. Packaging Corp.*,
602 F.3d 374 (5th Cir. 2010).................... 1
*Klick v. Cenikor Found.*,
94 F.4th 362 (5th Cir. 2024).................... 32
*Labor Opinion Letter*,
FLSA2018-25, 2018 WL 5921453....................17, 23, 25
*Litz v. Saint Consulting Grp., Inc.*,
772 F.3d 1 (1st Cir. 2014).................... 26
*Luke v. CPlace Forest Park SNF, L.L.C.*,
608 F. App'x 246 (5th Cir. 2015) .................... 30
*Lusardi v. Lechner*,
855 F.2d 1062 (3d Cir. 1988) .................... 35
*Martin v. Rush, LLC*,
No. 6:20-CV-00005-JDL, 2021 WL 229482 (E.D. Tex. Jan. 22, 2021) .................... 14
*Mickles v. Country Club Inc.*,
887 F.3d 1270 (11th Cir. 2018)....................34, 35
*N. Mississippi Commc'ns, Inc. v. Jones*,
951 F.2d 652 (5th Cir. 1992).................... 32
*Pickens v. Hamilton-Ryker IT Sols., LLC*,
133 F.4th 575 (6th Cir. 2025) ....................17, 21, 29
*Puckett v. United States*,
556 U.S. 129 (2009).................... 2
*Pullman-Standard v. Swint*,
456 U.S. 273 (1982)....................31, 32, 33
*Quinn v. Guerrero*,
863 F.3d 353 (5th Cir. 2017).................... 2
*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000).................... 1
*Singer v. City of Waco, Tex.*,
324 F.3d 813 (5th Cir. 2003).................... 35
*Smith v. Cooper/T. Smith Corp.*,
886 F.2d 755 (5th Cir. 1989).................... 31
*Swales v. KLLM Transp. Servs., L.L.C.*,
985 F.3d 430 (5th Cir. 2021).................... 32
*United States v. Carbajal*,
No. 20-40661, 2022 WL 963976 (5th Cir. Mar. 30, 2022) .................... 30

*United States v. Escalante-Reyes*,
689 F.3d 415 (5th Cir. 2012) .......... 2
*Venable v. Smith Int'l, Inc.*,
117 F.4th 295 (5th Cir. 2024) .......... 6
*Wilson v. Schlumberger Tech. Corp.*,
80 F.4th 1170 (10th Cir. 2023) .......... 29

Statutes

28 U.S.C. § 1291 .......... 1
28 U.S.C. § 1331 .......... 1
29 U.S.C. § 207(a)(1) .......... 11
29 U.S.C. § 216(b) .......... 1
29 U.S.C. § 255(a) .......... 34
29 U.S.C. § 256(b) .......... 35

**Rules**

Fed. R. Civ. P. 56(a) .......... 1

**Regulations**

29 C.F.R. § 541.100 .......... 12
29 C.F.R. § 541.602 and § 541.604 .......... 3
29 C.F.R. § 541.602(a)(1) .......... 19
29 C.F.R. § 541.602(b)(3) .......... 28
29 C.F.R. § 541.604 .......... 16, 18
29 C.F.R. § 541.604(a .......... passim
29 C.F.R. § 541.604(b) (2019) .......... passim

**Other Authorities**

Department of Labor Opinion Letter FLSA2018-25,
2018 WL 5925115 (Nov. 8, 2018) .......... 14
Department of Labor Report: *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*,
69 FR 22122 .......... passim

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over Appellants' Fair Labor Standards Act (FLSA) suit pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). Appellants appeal from the district court's final judgment (ROA.10866–10869) issued on July 3, 2025. 28 U.S.C. § 1291.

## STANDARD OF REVIEW

The district court's order granting summary judgment (ROA.9819–9856) against Plaintiff-Appellants Ainsworth, Anklis, Dankowski, Davis, Eaton, Naron, and Ogbogu (collectively, the "Summary Judgment Plaintiffs") is reviewed de novo. *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010).

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." *Jackson*, 602 F.3d at 377. The Court must "draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) (cleaned up). Under this standard, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

The district court's judgment (ROA.10866–10869) decertifying the collective action and dismissing, without prejudice, the remaining plaintiffs (the "Opt-In

Plaintiffs") adopted the Magistrate Judge's report and recommendation (ROA.10278–10302).[1] Appellants did not object to the Magistrate's report and recommendation, so the district court's order is reviewed for plain error. *See Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017). An order must be overturned under a plain-error review when: (1) an error occurred; (2) that is plain or obvious; and (3) the error affects the complaining party's substantial rights (e.g., the outcome of the proceedings would have been different had the issue been decided the other way). *Id.* (citing *United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (en banc) and *Puckett v. United States*, 556 U.S. 129, 135 (2009)). As later Supreme Court and Fifth Circuit precedent confirms, the lower court plainly erred in its interpretation of the salary basis test.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Did the district court err by failing to ask whether Schlumberger's "purported 'salary' truly compensates [Plaintiffs] for a week's worth of work or, instead, provides an artificial distinction between a salary and additional compensation[?]" *Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712, 725 (5th Cir. 2024).

2. Did the district court err in failing to apply § 604(a)'s requirement that pay based on days worked be paid "for work beyond the normal workweek[?]" *Id.* (quoting § 604(a)).

[1] The lower court concluded 15 opt-in plaintiffs executed agreements waiving their right to participate as part of a collective action. Appellants do not challenge that ruling.

3. Could a jury find § 604(b), as opposed to § 602(a) (as supplemented by § 604(a)), applies to Schlumberger's pay plan?

4. Did the district court plainly err in determining decertification was appropriate when it discounted the impact of the salary basis test based on the wrong legal standard?

## STATEMENT OF THE CASE

In this appeal, the Summary Judgment Plaintiffs seek reversal (or vacatur) of the district court's summary judgment order (which, by its terms, applied to only those plaintiffs), and all Appellants challenge the Court's decision to decertify the collective action. *See* ROA.9819–9856 (Ruling on Summary Judgment); ROA.10278–10302 (Ruling on Decertification); ROA.10866–10869 (Final Judgment). As in *Gentry*, the crux of the parties' disagreement is which regulation controls. Schlumberger "argues that its compensation structure is governed by § 602(a), while Plaintiffs rely on § 604(b)." *Gentry*, 102 F.4th at 719.[2]

The parties addressed Schlumberger's pay plan in lengthy dispositive motions. *See, e.g.*, ROA.4746–4933 (D's MSJ re Anklis); ROA.4934–5095 (D's MSJ re Ainsworth); ROA.6575–6610 (Ps' MSJ on Salary Basis Issue); ROA.8142-8171. How the "salary basis" test applied to "highly compensated employees" was a prominent issue. Notably, this Court's *en banc* decision in *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289 (5th

---

[2] Like the Supreme Court, we refer to 29 C.F.R. § 541.602 and § 541.604 "simply as" § 602 and § 604. *Helix*, 598 U.S. at 46.

Cir. 2021), *aff'd,* 598 U.S. 39 (2023) was not issued until "after the briefing in connection with the Motions closed." ROA.9715. The Supreme Court's decision in *Helix* was not issued until after the lower court ruled on both the summary judgment motions and Schlumberger's renewed request for decertification. ROA.10681–10691.

Before the lower court, Schlumberger characterized its pay practice as a "salary plus extras" plan. *See* ROA.8158–8160 (Schlumberger admits Appellants received a "salary" plus additional day rate based "rig pay"); ROA.9644 (Schlumberger maintained a "Field Bonus Policy" wherein its paid "rig site day rate bonuses" to "all members of the field crew performing shift duty (tour) while at the rig-site"); ROA. 9825 (Appellants "are each paid an annual salary" and "were also provided additional compensation of a day rate paid for any day they are present on a customer's rig" which "generally counts for the bulk of each [Appellants'] total compensation."). But directional drilling always takes place on a customer's rig. So, Appellants—who worked as Directional Drillers—received a day rate for every day they worked as Directional Drillers. *See, e.g.,* ROA.8261. Far from being "additional" pay for time worked "beyond the normal workweek," 29 C.F.R. § 541.604(a), Appellants' day rate pay was just wages paid for each day worked as a Directional Driller. *See, e.g.,* ROA.8261. Similarly, while Schlumberger like to call the day rate pay a "bonus," it was in fact "non-discretionary pay" paid for every day the Summary Judgment Plaintiffs worked. ROA.6497 (admitting the "bonuses" are "non-discretionary"); ROA.6337–6338 (day rate payments are made for every day worked on a rig).

To be sure, Schlumberger claimed Appellants "could work all week at the district office and they would not qualify for a single dollar of rig pay." *See, e.g.,* ROA.8160. But the testimony Schlumberger cites **never** mentions **any** work at a "district office" or that directional drillers ever **worked** without receiving (day rate) rig pay. ROA.8289. Instead, the cited testimony states the job rates were "linked to days on location and the services that they were running." ROA.8289. Even if the testimony said what Schlumberger claimed—and it does not—the Summary Judgment Plaintiffs testified to the contrary. *See, e.g.,* ROA.8281 (day rate paid for every day directional driller came into work); ROA.4790 (for time worked as a directional driller, Schlumberger paid a salary and a day rate); ROA.6337–6338.

Regardless, Schlumberger argued it didn't have to pay Appellants overtime because they were exempt from the FLSA. With respect to the salary basis requirement, Schlumberger argued § 604(b) didn't apply to the Summary Judgment Plaintiffs because it labeled part of their pay a base salary. It also argued § 604(b) did not apply at all to "highly compensated workers" (though this Court and, later, the Supreme Court, killed that argument explicitly). *Helix*, 598 U.S. at 58("§ 604(b) applies, just as § 602(a) does, to the [highly compensated employee] and general rules alike"). Appellants argued the presence of a guaranteed payment (whether labeled "salary" or not) could not allow it to avoid the requirements of § 604(b) because, just like § 602(a), § 604(b) **requires** payment of at least the minimum salary level "on a salary basis."

Despite the extensive briefing, the lower court's discussion of the salary basis issue was confined to just a few pages. ROA.9822–9827.[3] Perhaps because its decision predated *Helix*, *Hewitt*, and *Gentry*, the lower court did not "take a hard look at whether a purported 'salary' truly compensates employees for a week's worth of work or, instead, provides an artificial distinction between a salary and additional compensation." *Compare* ROA.9822–9827 *with Gentry*, 102 F.4th at 725. Nor did the district court evaluate whether the daily rate was paid for time worked "beyond the normal workweek" or "within the normal workweek." *Compare* ROA.9822–9827 *with Venable v. Smith Int'l, Inc.*, 117 F.4th 295, 300 (5th Cir. 2024) (quoting *Gentry*, 102 F.4th at 723).

Instead, the district court asked only whether Schlumberger provided an alleged "annual salary that is not subject to reduction regardless of the numbers of hours or days worked" that "satisfies the requisite guaranteed minimum weekly salary requirement" (i.e., that met the salary *level* test). ROA.9825. Because an amount exceeding the salary level test was labeled a "salary," the district court concluded no further inquiry was required. Believing (without analyzing whether) § 602(a) applied, the lower court disregarded the impact of § 604(b)'s "reasonable relationship" test. ROA.9825–9827 ("The Court, therefore, concludes that Schlumberger's compensation structure does not require application of the 'reasonable relationship' test."). While it

[3] By comparison, the Western District provided a fulsome discussion of all the relevant salary basis regulations when it rejected the lower court's ruling. *See Guilbeau v. Schlumberger Tech. Corp.*, 719 F. Supp. 3d 702, 718 (W.D. Tex. 2024) (rejecting *Boudreaux*).

recited the language of § 604(a), the lower court made no effort to determine whether Schlumberger's paid day rates for time worked "beyond" the normal workweek, or within it. *Compare* ROA.9825–9827 *with Gentry*, 102 F.4th at 722. Believing the "salary basis" test to be satisfied, the district court determined the Summary Judgment Appellants met the relaxed "duties test" applicable to "highly compensated employees," and granted Schlumberger summary judgment. ROA.9827-9855.

Schlumberger's renewed decertification motion turned on whether its exemption defenses could be evaluated using common evidence. *See* ROA.9661; ROA.9908 (admitting its HCE Test defense applies to most Appellants). Schlumberger argued that because the district court found it satisfied the "salary basis" test the only question left was whether Appellants performed exempt duties.[4] ROA.9909.

Unsurprisingly, the lower court's interpretation of the salary basis test informed its decision on decertification. Indeed, the magistrate declined to consider the impact of the salary basis test altogether. ROA.10290. Instead, the magistrate felt it had to evaluate the case based solely on the "duties" element for exemption. ROA.10290. She

[4] Schlumberger admitted "the analysis for the majority of the class falls under the highly compensated employee exemption as they were paid a base salary in excess of $455 per week and their total compensation was in excess of $100,000." ROA. 9635. Schlumberger needed this to be the case because the only question would become whether Appellants satisfied the "duties" test for exemption. ROA. 9635. Appellants contend because Schlumberger's pay plan failed the "salary basis" test any variation in Appellants' job duties is immaterial. ROA. 7908-7974. Thus, as Schlumberger admits, "[t]he issue requiring common evidence [was] whether each [Appellant] is exempt." ROA. 9636.

concluded that—in the absence of a unifying salary basis challenge—the exemption issue required "highly fact-specific analyses to determine whether which exemption applies to each individual plaintiff." ROA.10295.

Specifically, the district court found that because "the Court has already ruled that STC's hybrid compensation structure does not require application of the reasonable relationship test" that "one or more of the white-collar exemptions may apply to the plaintiffs if STC establishes that the minimum weekly guaranteed compensation requirement had been met and that the job duties test is satisfied." ROA.10290. In other words, the district court decertified this matter because it believed the "salary basis" test had been met (since Schlumberger's "salary plus extras" pay plan constituted a salary under § 602(a) such that the application of § 604(b)'s reasonable relationship requirement was unnecessary) and, as such, "a highly fact-specific analysis of each plaintiff's duties and responsibilities" was necessary "to determine which exemption is applicable at any given point in time." ROA.10299. Therefore, the mistaken belief Schlumberger's "salary plus extras" pay plan satisfied the "salary basis" test lead the lower court to decertify the collective and dismissing the Opt-In Appellants' claims without prejudice. *See* ROA.10869.

In February 2023, approximately four months after the magistrate's ruling on decertification, the Supreme Court substantively addressed the FLSA salary basis test. Respectfully, the Supreme Court confirmed what Appellants said all along: (1) § 602(a) applies when the "predetermined amount" is covers all time worked in the workweek—

*i.e.,* when it is paid on a weekly **basis**; (2) weekly pay that varies based on days worked is evaluated under § 604(b), not § 602(a); and (3) § 604(b) applies even under the HCE exemption. *See Helix*, 598 U.S. at 54, 57.

Appellants promptly requested the lower court allow briefing on the impact of *Helix* on its prior summary judgment and decertification rulings. ROA.10681–10691. Given the Supreme Court's reliance on the Department of Labor's position, Appellants included the Department of Labor's *amicus* brief from *Helix* which explained, in detail, how the salary basis applies. 10693–10751. But the lower court declined Appellants request. ROA.10819.

## SUMMARY OF THE ARGUMENT

The Supreme Court recognized employers will assure employees a relatively modest "salary" in addition to their daily pay "in a heartbeat if doing so eliminated the need to pay overtime." *Helix*, 598 U.S. at 61. That is exactly what Schlumberger is attempting here.

The lower court recognized "the bulk of each Plaintiffs' total compensation" came from a "day rate paid for any day they are present on a customer's rig." ROA.9825. Because Directional Drillers always perform their directional drilling work on customer's rig, this means "**every day** [they] came in and **worked**, [they] **got a day rate** bonus." ROA.8281; ROA.4790 (when he worked as a directional driller, he was paid a salary plus a day rate); ROA.6337–6338 (day rate paid for every day worked on a wellsite). In other words, the Summary Judgment Plaintiffs regular pay for a normal

workweek could "be calculated only by counting those days once the week is over—not, as § 602(a) requires, by ignoring that number and paying a predetermined amount." *Helix*, 598 U.S. at 51. Nonetheless, the district court held § 602(a), not § 604(b), applied as a matter of law. ROA.9827. Stated differently, the lower court held there was no evidence from which a jury could conclude that § 604(b), rather than § 602(a), controlled.

But even before *Helix*, this Court recognized the salary basis test prevents employers from dodging its requirements by means of a token amount paid on a salary basis. *Hewitt*, 15 F.4th at 294 (employers cannot evade the salary basis requirements by guaranteeing just $455 a week to employees who "routinely receive weekly pay for $1,500 or more" because it would effectively allow "the employer to dock the employee for partial day absences"). An "employee is not paid on a 'salary basis' if 'the employee's usual weekly income' calculated on [a daily] basis '**far exceeds the 'salary' guarantee**' the employer provided[.]" *Id.* (quoting *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 185 (3d Cir. 1988)).

Following the Supreme Court's decision, this Court made it clear "*Helix* and sections 602(a), 604(a), and 604(b) require courts to take a hard look at whether a purported 'salary' truly compensates employees for a week's worth of work or, instead, provides an artificial distinction between a salary and additional compensation." *Gentry*, 102 F.4th at 725. It also confirmed employees who are paid on "a two-tiered system" consisting of an alleged "Guaranteed Weekly Salary" plus additional time-based pay

must be analyzed under § 604. *Gentry*, 102 F.4th at 716, 722. If this allegedly "additional" pay is based on hours worked "beyond the normal workweek[,]" the employer can comply with § 602(a) (as supplemented by § 604(a)). *Id.* at 722. But if, as here, the day rate payments are for time "*within* the normal workweek"—§604(b) applies. *Id.*

A jury could find Schlumberger's alleged "salary," which amounted to a fraction of their usual weekly pay, did not compensate the Summary Judgment Plaintiffs "for a week's worth of work[,]" precluding application of § 602(a). *Gentry*, 102 F.4th at 725. It could also conclude Schlumberger's day rate payments were simply wages for working *within* the normal workweek, rather than *beyond* it, mandating application of § 604(b). *Id.* at 722 (citing § 604(a)–(b)). And a jury could certainly find Schlumberger's "guaranteed" salaries "were grossly disproportionate to Plaintiffs' typical earnings[,]" in violation of § 604(b). *Id.* at 724; ROA.8606 (Ainsworth's typical earnings outweighed his supposed salary by a ratio of at least 4.24 to 1).

## ARGUMENT

### A. A Jury Could Find Schlumberger Didn't Pay on a "Salary Basis."

#### 1. Schlumberger's Must Prove It Paid on a "Salary Basis."

The FLSA requires employers to pay employees overtime for hours worked after 40 in a workweek unless the employer proves the employees fall within an "exemption." *See* 29 U.S.C. § 207(a)(1). Schlumberger says the Summary Judgment Plaintiffs are exempt under the highly compensated employee (HCE) exemption, the administrative exemption, and the executive exemption. ROA.9822. Each exemption requires

Schlumberger to prove it paid on a "salary basis." *See* 29 C.F.R. § 541.100 (executive exemption); § 541.200 (administrative exemption); § 541.601(b)(1) (HCE exemption).

### 2. The Two, Non-Overlapping Paths to Compliance with the "Salary Basis" Test — § 602(a) and § 604(b).

There are two, "non-overlapping paths to satisfy the salary-basis requirement," § 602(a) and § 604(b). *Helix*, 598 U.S. at 56. Under § 602(a), the salary must be paid on a "weekly basis." *Gentry*, 102 F.4th at 720. This has nothing to do with the amount of the check, the frequency of the check, **or** whether it is "only 'part' of Plaintiffs' total compensation." *Id.* at 720–721. Instead, the weekly "predetermined amount" must be calculated by reference to what the employee earns for the week, not some fraction of it. *Id.* "And just as employees paid an hourly rate are paid for all work performed that hour, a weekly rate compensates employees for all work performed that week." *Id.* at 720. While additional time-based pay is permissible, the regulations expressly limit this to "additional compensation based on hours worked for work *beyond the normal workweek*." *Id.* at 722 (quoting 29 C.F.R. § 541.604(a)).

Section 604(b) applies when an "employee's earnings" are computed on "shorter bases"—such a day rate—but the employer "also" provides "a guarantee of weekly payment approximating what the employee usually earns." *Helix*, 598 U.S. at 55–56. Just like § 602(a), § 604(b) requires the guaranteed amount be paid on "salary basis." 29 C.F.R. §§ 602(a), 541.604(b). However, unlike § 602(a), § 604(b) expressly permits the guaranteed portion to be **less** than the employee earns in a typical workweek. 29 C.F.R.

§ 541.604(b) (2019). For example, an employee who normally earns between $840 and $1,050 based on the number of days worked can meet the salary basis requirement if the employer "also" provides a guarantee of at least $725 "paid on a salary basis." *Id.* Also unlike § 602(a), § 604(b) permits day rate compensation for time worked "*within* 'the employee's normal scheduled workweek.'" *Gentry*, 102 F.4th at 722.

**a) Under § 602(a), the Alleged "Salary" Must Cover a "Week's Worth of Work" (It Must Be the "Full Salary for the Week").**

Section 602(a) embodies the standard meaning of the word "salary." *Helix*, 598 U.S. at 54. A "salary" constitutes a "fixed compensation regularly paid, as by the year, quarter, month, or week." *Id.* at 51 (citing Webster's New Int'l Dictionary 2203 (2d ed. 1949)). The "concept of 'salary' is linked, '[a]s a matter of common parlance,' to 'the stability and security of a regular weekly, monthly, or annual pay structure.'" *Id.* at 52 (quoting *Hewitt*, 15 F.4th at 291). In other words, "a true salary" is "a steady stream of pay, which the employer cannot much vary and the employee may thus rely on week after week." *Id.* at 47 (citing *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 FR 22122, 22184).

For this reason, § 602(a) applies "solely to employees paid by the week (or longer)[,]" "is limited to weekly-rate employees" and "the plain text…excludes" workers paid on a daily basis—including so-called additional compensation paid on a daily basis for time within the normal workweek. *Id.* at 56–57; *Gentry*, 102 F.4th at 722. Indeed, "an employee receives compensation on a weekly—as opposed to a daily or hourly—basis,

as § 602(a) demands, when he gets paid a weekly rate." *Id.* at 53. "[T]he plain-text" of § 602(a) confirms the "full salary" for the normal workweek must be guaranteed—a true "weekly-rate[.]" *Id.*

A weekly-rate worker's "paycheck reflects how many weeks—not days or hours—he has worked." *Helix*, 598 U.S. at 54. That's because "[e]very part of the provision [§ 602(a)] describes those paid a weekly rate, rather than a daily or hourly one." *Id.* "Were § 602(a) also to cover daily-and hourly-rate employees, it would subvert § 604(b)'s strict conditions on when their pay counts as a 'salary.'" *Id.* at 56. Indeed, "§ 604(b) in fact confirms the plain-text, weekly-rate only reading of § 602(a)." *Id.*

If an employer does not pay a "weekly-rate-only" as allowed by § 602(a), it can only pass the "salary basis" test by meeting the requirements of § 604, the regulation governing pay plans consisting of both a "minimum guarantee plus extras." *Helix*, 598 U.S. at 56; *see also* *Gentry*, 102 F.4th at 722. That's because "it [§ 602(a)] works in tandem with § 604(b) … with § 604(b) taking over where § 602(a) leaves off." *Id.* And under § 604(b), the guaranteed "salary" must bear a "reasonable relationship" to the amount "actually earned." 29 C.F.R. § 541.604(b); *Hewitt*, 15 F.4th at 294; *Martin v. Rush, LLC*, No. 6:20-CV-00005-JDL, 2021 WL 229482, at *7 (E.D. Tex. Jan. 22, 2021); *see also* Dept. of Labor Opinion Letter FLSA2018-25, 2018 WL 5925115, at *2 (Nov. 8, 2018).

The district court did not analyze whether Schlumberger's alleged salary covered a week's worth of worth and disregarded § 604(a) requirement that "additional" time-based pay be paid for time worked "beyond the normal workweek." *See* ROA.9824–

9827. It purported to sidestep § 604's requirements altogether, claiming Schlumberger's "salary plus extras" pay plan satisfied § 602(a). But as the Supreme Court explained, § 602(a) and § 604(b) create "non-overlapping paths to satisfy the salary-basis requirement, with § 604(b) taking over where § 602(a) leaves off." *Helix*, 598 U.S. at 56. In other words, a pay plan "meeting § 602(a) … does not also have to meet § 604(b)" precisely because they are alternate paths. If one path applies, the other does not.

Sections 602(a) and 604(a) "define the permissible compensation schemes for employees paid on weekly or less frequent basis," while "§ 604(b) concerns situations when employees paid on a more frequent basis—such as by the hour, shift, or day[,]" those whose guaranteed compensation covers *less* than the normal workweek. *Gentry*, 102 F.4th at 719. The Supreme Court expressly prohibited courts from interpreting § 602(a) in a manner that would "subvert § 604(b)'s strict conditions on when [a minimum guarantee plus daily] pay counts as a 'salary.'" *Helix*, 598 U.S. at 56; *Gentry*, 102 F.4th at 723. Therefore, "§ 604(b) in fact confirms the plain-text, weekly-rate **only** reading of § 602(a)." *Id.* at 57 (emphasis added).

As discussed further below, there is substantial evidence showing Schlumberger did not pay the Summary Judgment Plaintiffs (or the Appellants generally) a true "weekly-rate" and that its day rates were paid for time worked *within* the normal workweek. *See* ROA.8158–8160 (Schlumberger admits Appellants received a "salary" plus additional day rate based "rig pay"); ROA.9644 (Schlumberger maintained a "Field Bonus Policy" wherein its paid "rig site day rate bonuses" to "all members of the field

crew performing shift duty (tour) while at the rig-site"); ROA. 9825 (Appellants "are each paid an annual salary" and "were also provided additional compensation of a day rate paid for any day they are present on a customer's rig" which "generally counts for the bulk of each [Appellants'] total compensation."). The district court thus erred in holding § 604(b) could not apply because a small portion of the Summary Judgment Plaintiffs' weekly earnings came from a "salary that is not subject to reduction regardless of the numbers of hours or days worked" that "satisfies the requisite guaranteed minimum weekly salary requirement" of § 602(a). *See* ROA.9824–9827 ("The Court, therefore, concludes that Schlumberger's compensation structure does not require application of the 'reasonable relationship' test.").

**b) Section 604 Applies to "Salary Plus Extras" Pay Plans.**

The governing regulations specifically address employees whose pay includes **both** an amount paid on a "salary basis" **and** pay based on time worked. *See* 29 C.F.R. § 541.604. The question of which subsection applies—§ 604(a) or § 604(b)—turns in part on whether the employee's "full salary" for the week is guaranteed, or something less than a full week's pay. *Gentry*, 102 F.4th at 720–721.

***If*** the salary reflects the employee's full earnings for the week, § 604 permits an employer to pay "additional compensation" based on time worked "beyond the normal workweek[.]" *See* 29 C.F.R. § 541.604(a). But it "would be nonsensical" for the regulations to limit the additional to time worked "'beyond the normal workweek'—if

pay for all or most of an employee's [time] within the normal workweek could also constitute 'additional compensation' under 604(a)." *Gentry*, 102 F.4th at 722.

If the "salary" covers less than an employee's full earnings for a week, then § 604(b) applies. Under § 604(b), the employer can guarantee *less* than a full week's pay as long as the "guaranteed amount" is "reasonably related" to the compensation "actually earned." 29 C.F.R. § 541.604(b); *Helix*, 598 U.S. at 47; *Hewitt*, 15 F.4th at 293–94; *Gentry*, 102 F.4th at 724; *Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 591 (6th Cir. 2025). That is, the "weekly salary guarantee" must be "roughly equivalent to the employee's usual earnings at the assigned hourly … rate for the employee's normal scheduled workweek." 29 C.F.R. § 541.604(b). A "1.5-to-1 ratio of actual earnings to guaranteed weekly salary is a 'reasonable relationship' under the regulations." Dept. of Labor Opinion Letter FLSA2018-25, 2018 WL 5921453, at *2 (citing 29 C.F.R. § 541.604(b) and noting 1.83 to 1 "far exceeds" the permissible ratio); *Gentry*, 102 F.4th at 724 (a ratio of 5.19 to 1 is "grossly disproportionate").

Any suggestion that "§ 604(a) allows hourly compensation for hours worked within the workweek" is clearly incorrect, as it would eliminate the "first distinction" between § 604(a) and § 604(b). *Gentry*, 102 F.4th at 723. "It would also effectively eliminate the second distinction, allowing employers to circumvent paragraph (b) by permitting the same compensation structure as paragraph (a) but without the reasonable relationship test." *Id.* Respectfully, the lower court's "interpretation impermissibly steps past the distinctions between § 604(a) and (b), and offers a

runaround to paragraph (b)'s reasonable relationship test." *Id.* But as the Supreme Court noted in *Helix*, we "cannot simply 'cart § 604(b) off the stage' but must read sections 602(a), 604(a), and 604(b) in harmony." *Id.* (cleaned up, quoting *Helix*, 598 U.S. at 56).

Because an amount paid on a "salary basis" is required by 602(a), 604(a), **and** 604(b), the existence of an amount labeled a "guaranteed salary" cannot render the reasonable relationship test inapplicable. 29 C.F.R. §§ 541.602(a), 541.604(a)–(b). Again, § 604(b) expressly requires a "base salary" as *one* of its elements: "An exempt employee's earnings may be computed on an hourly, a daily or a shift basis … if the employment arrangement also **includes a guarantee of at least the minimum weekly required amount paid on a salary basis** regardless of the number of hours, days or shifts worked, **and** a reasonable relationship exists between the guaranteed amount and the amount actually earned." 29 C.F.R. § 541.604(b) (emphasis added). Any other interpretation would negate the reasonable relationship test entirely since, according to the express text of § 604(b), the reasonable relationship test **only applies** if the employee is first provided "a guarantee of at least the minimum weekly required amount paid on a salary basis[.]" Id.

For employees like Appellants, whose weekly "earnings" can only be "computed" once the number of days worked is known, the presence of a weekly guaranteed amount—paid on a "salary basis"—is step one of the applicable test, not the finish line. Thus, the district court's determination that Schlumberger's "salary plus extras" pay plan met the "salary basis" test through § 602(a)—without considering

whether it reflected a full week's pay **or** whether the "additional" pay was for time worked within the normal workweek—is error.

#### c) Section 604(b) Confirms a Salary Paid on a "Weekly Basis" Covers All Time Worked in a Workweek.

Section 604(b) requires the guaranteed pay be close to the "amount actually earned" in a workweek to ensure the "compensation system [is] functioning … like a true salary." *Helix*, 598 U.S. at 47. How does this ensure the pay plan is functioning "like a true salary?" Because § 602(a) requires the employer to guarantee the "full salary for any week" in which the employee works. 29 C.F.R. § 541.602(a)(1). While § 604(b) allows the employer to guarantee something less, the guaranteed portion must still be reasonable under the circumstances. *Id.* at 541.604(b).

If "functioning … like a true salary" only meant guaranteeing an amount of pay exceeding the minimum salary level in any week the employee works, *Helix* would have won at the Supreme Court. "Indeed, this argument [was made by] the *Helix* dissent." *Gentry*, 102 F.4th at 721. The *Helix* dissent argued that because the "daily 'predetermined' rate ($963 per day) was higher than the weekly minimum requirement of $455 per week specified in the regulations. If a worker is guaranteed at least $455 for any day that he works, that worker by definition is guaranteed at least $455 for any week that he works." *Helix*, 598 U.S. at 64–65(Kavanaugh, J., dissenting). But, of course, the majority "disagreed with this analysis[.]" *Alvarez v. NES Glob. LLC*, 709 F. Supp. 3d 284, 296 (S.D. Tex. 2023).

The *Helix* "majority rejected this argument as 'a non-sequitur to end all non-sequiturs,' characterized it as 'carting § 604(b) off the stage,' and pointed out … the salary level test … is distinct from the salary basis test." *Gentry*, 102 F.4th at 721, n. 42 (quoting *Helix*, 598 U.S. at 55, n.5). "Furthermore, as the [*Helix*] majority explained, this argument overlooks that § 602(a) requires payment be 'without regard' to the number of days worked." *Id.* "When an employee's take-home pay is determined by the number of days worked, payment is not 'without regard' to their daily rate." *Id.*

#### d) A Token "Salary" Doesn't Meet Either of ***Helix***'s Paths to Compliance with the "Salary Basis" Test.

At *both* the Supreme Court and Fifth Circuit *en banc* arguments, the judges were concerned with how to structure a compliant pay system involving day rates. For example, Judge Southwick asked: "What is the minimum, the most minor alteration in this payment scheme that Helix used that would satisfy your interpretation? … Is it a matter of semantics? If Helix had agreed to pay $963, whatever it is, as a weekly salary, and then all the rest of this follows, would that satisfy your suggestion? Is it a matter that they called it a day rate and didn't call it a weekly rate or a weekly guarantee?" Oral Argument, *Hewitt v. Helix Energy Solutions Grp*., No. 19-20023 (5th Cir. May 25, 2021) (en banc) (audio recording at 11:46–12:15).

Both courts made it clear the difference is not one of semantics, but of substance. The Supreme Court explained "Helix could come into compliance with the salary-basis requirement … in either of two ways. **It could add to [the] per-day rate**

**a weekly guarantee that satisfies § 604(b)'s conditions. Or it could convert [the] compensation to a straight weekly salary for time … on the rig**." *Helix*, 598 U.S. at 60 (emphasis added). That is, Helix could (1) guarantee an amount that reasonably approximates the employee's actual weekly earnings to satisfy § 604(b); or (2) "convert [the employee's] compensation to a straight weekly salary for time [worked]" to satisfy § 602(a). *Id.* at 60. Notably, neither the Supreme Court nor this Court suggested an employer could just add a token salary in an amount substantially lower than even the guarantee required by § 604(b) (like Schlumberger purports to do). *Id.* In fact, the Supreme Court made it clear such a ploy would not comply. *Id.* at 61 (noting "employers would assure [workers] $455 per week in a heartbeat if doing so eliminated the need to pay overtime."). With 27 distinguished jurists focused on the issue, surely **someone** would have mentioned that adding a token "salary" would be enough to comply with the salary basis test.[5]

And as Judge Sutton noted, "What point would there be in a regulatory scheme that handled this case and *Helix* differently? The only difference between the two is the label applied to each employee's … pay. To allow such easy evasion would make little sense, and much mischief." *Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 585 (6th Cir. 2025). Rather focusing on labels, "*Helix* and sections 602(a), 604(a), and 604(b)

[5] This Court didn't suggest adding $1,000 weekly salary to Hewitt's pay plan, but a guarantee of $4,000. *Hewitt*, 15 F.4th at 292. If just adding a token salary was sufficient, certainly that option would have been presented.

require courts to take a hard look at whether a purported 'salary' truly compensates employees for a week's worth of work or, instead, provides an artificial distinction between a salary and additional compensation." *Gentry*, 102 F.4th at 725.

### 3. Schlumberger Failed to Comply with Either § 602(a) or § 604.

#### a) Schlumberger Didn't Pay Appellants a "Weekly-Rate."

There is substantial evidence showing Schlumberger's purported "salary" was not paid on a weekly basis. ROA.8158–8160 (Schlumberger admits Appellants received a "salary" plus additional day rate based "rig pay"); ROA.9644 (Schlumberger maintained a "Field Bonus Policy" wherein its paid "rig site day rate bonuses" to "all members of the field crew performing shift duty (tour) while at the rig-site"); ROA. 9825 (Appellants "are each paid an annual salary" and "were also provided additional compensation of a day rate paid for any day they are present on a customer's rig" which "generally counts for the bulk of each [Appellants'] total compensation."). Because the Summary Judgment Plaintiffs (and all Appellants) were employed as Directional Drillers, they always performed their directional drilling work on customer's rig. In other words, "**every day** [they] came in and **worked**, [they] **got a day rate** bonus." *See, e.g.,* ROA.8281; ROA.4790 (when he worked as a directional driller, he was paid a salary plus a day rate); ROA.6337–6338 (day rate paid for every day worked on a wellsite). The district court thus erred in finding, as a matter of law, that § 604(b) did not apply. ROA.9825-9827.

### b) A Jury Could Find Schlumberger Fails the "Reasonable Relationship" Test Under § 604(b).

Because Schlumberger did not pay Appellants a "weekly-rate," it cannot meet the salary requirements of § 602(a). *See Helix*, 598 U.S. at 56–58. Instead, it must instead comply with the "salary basis" requirements of § 604(b). *Id.*

And under § 604(b), to qualify as a *bona fide* "salary," the "guaranteed amount" must be "reasonably related" to compensation "actually earned." 29 C.F.R. § 541.604(b); *Helix,* 598 U.S. at 47; *Hewitt*, 15 F.4th at 293–94. That is, the "weekly salary guarantee" must be "roughly equivalent to the employee's usual earnings at the assigned hourly … rate for the employee's normal scheduled workweek." *Id.* A "1.5 to 1 ratio of actual earnings to a guaranteed weekly salary satisfies this test." *Gentry*, 102 F.4th at 724; *see also* Dep't of Labor, Wage & Hour Div., *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 FR 22122, 22184(Apr. 23, 2004) ("if a nurse whose actual compensation is determined on a shift or hourly basis usually earns $1,200 per week, the amount guaranteed must be roughly equivalent to $1,200.").

For decades, administrations of all political persuasions have confirmed a "salary" amounting to a fraction of a normal week's pay isn't enough. *See* Dept. of Labor Opinion Letter FLSA2018-25, 2018 WL 5921453, at *2(employees who usually work 53 hours a week aren't paid on a "salary basis" if their alleged "weekly guarantee" is only 30 hours of pay); Dept. of Labor Opinion Letter FLSA 437 (May 7, 1993)

(employees who typically work 42 hours a week aren't paid on a "salary basis" if the alleged "guarantee" is just 20 hours of pay). In issuing the 2004 regulations, the DOL explained why incorporating the reasonable relationship test—the DOL's "long-standing interpretation of the existing salary basis regulation"—was necessary. *See* 69 FR 22122-01 (discussing 29 C.F.R. § 541.604(b)). **Without it, "employees could routinely receive weekly pay of $1,500 or more and yet be guaranteed only the minimum required $455 (thus effectively allowing the employer to dock the employee for partial day absences)."** 69 Fed. Reg. at 22184. "Such a pay system would be inconsistent with the salary basis concept and the salary guarantee would be nothing more than an illusion." *Id.*; *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 185 (3d Cir. 1988) (an employee is not paid on a "salary basis" if "the employee's usual weekly income" calculated based on days or hours worked "far exceeds the 'salary' guarantee" the employer provided); *Hewitt*, 15 F.4th at 294 (same).

Where an employee's regular weekly income varies based on days worked, the "salary basis" test isn't met unless § 604(b) is met. *See Helix*, 598 U.S. at 45–47 (a "predetermined and fixed salary…does not vary with the precise amount of time [an employee] works" and "a true salary [is] a steady stream of pay, which the employer cannot much vary[.]"), 54 at n.5 (noting a worker was not paid a salary where "his weekly take-home pay could be as little as $963 or as much as $13,482, depending on how many days he worked."), 55 (§ 602(a) is limited to employees paid a true weekly-rate); *Bongat v. Fairview Nursing Care Ctr., Inc.*, 341 F. Supp. 2d 181, 185 (E.D.N.Y. 2004). But, again,

the district court never analyzed whether Schlumberger's "salary plus extras" pay plan (1) "truly compensates employees for a week's worth of work or, instead, provides an artificial distinction between a salary and additional compensation"; (2) provided time-based "pay for work within the normal workweek" (as opposed to "beyond the normal workweek"); or (3) qualified, as a matter of law, under § 602(a) (rather than applying § 604). *Compare Gentry*, 102 F.4th at 719, 722, 725 with ROA.9824–9827 (addressing none of these issues).

Recall that "usual earnings that are nearly 1.8-times--close to double--the guaranteed weekly salary materially exceed the permissible ratios … and are not roughly equivalent to that salary under § 541.604(b)." Dept. of Labor Opinion Letter FLSA2018-25, 2018 WL 5921453, at *2. Had the district court applied § 604(b), Appellants' "usual earnings"—based on the days they worked—impermissibly dwarfed their "weekly base salary." 29 C.F.R. § 541.604(b); ROA.8606 (Ainsworth's ratio was at least 4.24 to 1); ROA.8561 (Anklis's ratio was at least 4.76 to 1); ROA.8527 (Dankowski's usual earnings to salary ratio amounted to 1.8 and higher); ROA.8499 (Davis's ration was at least 4.05 to 1); ROA.8454 (Eaton's ratio was at least 2.3 to 1); OA.8427 (Naron's ratio was at least 4.5 to 1); ROA.8395 (Ogbogu's ratio was at least 3.08 to 1).

Hani Anklis's final paycheck for 2014 illustrates the reality of Schlumberger's pay plan: Compare his "salary" earnings:

| EARNINGS | Rate | RetroHrs | RetroAmt | CurrHrs | CurrAmt | YTD |
|---|---|---|---|---|---|---|
| Bi-Weekly Salary | | | | 112.00 | 1,980.77 | 47,678.98 |

with his "Rig Day Rate":

| | | | | | | |
|---|---|---|---|---|---|---|
| Rig Day Rate | 850.00 | 7.00 | 5,950.00 | 2.00 | 1,700.00 | 207,400.00 |

ROA.4840. Davis's final paycheck is also instructive. As of the pay period ending March 7, 2025, Davis year-to-date "Bi-Weekly Salary" amount to just **$2,652.84.** ROA.6372. By contrast, his "Rig Day Rate" amounted to **$9,900**—a ratio of **4.73 to 1**. Schlumberger's meager "salary" was "grossly disproportionate" to the Summary Judgment Plaintiffs' "typical earnings." *Gentry*, 102 F.4th at 724.

**c) Other Pre- and Post-*Helix* Cases Do Not Support the Lower Court's Decision.**

The lower court relied on two pre-*Helix* cases to support its reasoning. ROA.9826 (citing *Litz v. Saint Consulting Grp., Inc.*, 772 F.3d 1 (1st Cir. 2014) & *Anani v. CVS RX Servs., Inc.*, 730 F.3d 146 (2d Cir. 2013)). But this Court has already pointed out that "*Litz* also relied on the same flawed rationale rejected in *Helix*." *Gentry*, 102 F.4th at 725, n. 70. Moreover, it specifically held that "under *Helix*, such a scheme now requires analysis under § 604(b)." *Id.* Respectfully, the lower court's citation to *Litz* confirms it was applying the wrong legal standard.

With respect to *Anani*, this Court noted it upheld a compensatory scheme where the employee was "assured an annual salary, whose weekly or biweekly pay was a portion

of that salary based on the expected hours worked per week, and who received additional compensation for hours worked beyond the agreed-upon workweek." *Gentry*, 102 F.4th at 724 (citing *Anani*, 730 F.3d at 147). In *Anani*, a pharmacist received a guaranteed weekly base salary, based on a 44-hour week that always exceeded $1,250. *Anani*, 730 F.3d at 147. This salary indisputably covered **all** the hours he was required to work. The court specifically noted the pharmacist "worked [any] extra shifts voluntarily" and this voluntary "extra work"—beyond his required schedule—was paid by the hour. *Id.* at 147. That is, CVS paid the pharmacist a salary covering all his required work hours and paid him extra for working hours he chose—but was not required—to work. If the pharmacist **elected** to work more than 44 hours in a week, CVS paid him extra based on an hourly rate calculated by dividing his weekly salary by 44 hours. *Id.* Since any additional time worked was at the pharmacist's option, the additional "straight time" pay was for hours worked "beyond the normal workweek[.]" 29 C.F.R. § 541.604(a) ("the exemption is not lost if an exempt employee who is … paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek.") (emphasis added); *cf. Hewitt*, 15 F.4th at 303 (recognizing this option matters since "[m]illions of Americans prefer more free time over more money") (Ho, J., concurring).

Despite what Schlumberger might say, its position isn't helped by *Hebert v. FMC Techs., Inc.*, No. 22-20562, 2023 WL 4105427 (5th Cir. June 21, 2023), *cert. denied*, 144 S. Ct. 820 (2024)). "*Hebert* is fully consistent with [*Gentry*] as the [*Hebert*] record indicated

that Hebert's biweekly salary was a function of this annual salary and roughly equated the hours worked during his normal workweek." *Gentry*, 102 F.4th at 725, n.70. The *Hebert* plaintiff normally worked "in the office" but would "**occasionally** visit offshore sites to assist with the installation of FMC equipment." *Hebert*, 2023 WL 4105427, at *1 (emphasis added). The "office" work differed materially from the "field" work. *Id.* And for the occasional days "he was required to be in the field to assist with installation projects[,]" the plaintiff received a "field service premium[.]" *Id.* at *2. In other words, as in *Anani*, Hebert's salary compensated him all hours worked during the normal workweek. And both *Hebert* and *Gentry* are confirm that under § 602(a) "a salary must provide a weekly rate." *Gentry*, 102 F.4th at 725, n.70. "Hebert's premium payments constituted true, additional compensation under § 541.604(a) because they were in addition to this weekly rate." *Id.*

As noted above, Schlumberger split payment for every workday (not just the workweek) into "salary" and day rate payments. ROA.8281; ROA.4790; ROA.6337–6338. Schlumbger's allegedly "salaried" employees would therefore suffer a reduction in pay if, for example, they missed a day for jury duty *despite* the fact such reductions are improper. 29 C.F.R. § 541.602(b)(3). This "artificially divide[s] pay into a 'salary' and additional compensation in order to avoid paying employees a true salary." *Gentry*, 102 F.4th at 719, n.22 (citing 14 Fed. Reg. 7730 (Dec. 28, 1949)). And it is improper. *Id.* In fact, that's why the reasonable relationship test—§ 604(b)—exists. *Id.* (citing 69 Fed. Reg. 22122, 22184 (Apr. 23, 2004)).

Schlumberger may raise *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170 (10th Cir. 2023). But this Court explained how "*Schlumberger* overlooked the 'antecedent' question in *Helix*: whether the salary, regardless of the frequency with which it was distributed, provided a true weekly rate." *Gentry*, 102 F.4th at 725 (citing 598 U.S. at 50, n.3). Moreover, it appears the MWD in *Wilson* only occasionally received time-based in addition to his salary. *See Pickens*, 133 F.4th at 585 (discussing *Wilson*, 80 F.4th at 1173). And, with due respect to the Tenth Circuit, it cannot be that § 604(b) applies only when the underlying salary is "calculated" by reference to days or hours worked. *Wilson*, 80 F.4th at 1179, n.4. We know that from the plain language of § 604(b): "[F]or example, an exempt employee guaranteed compensation of at least $725 for any week in which the employee performs any work, and who normally works four or five shifts each week, may be paid $210 per shift without violating the … salary basis requirement." 29 C.F.R. § 541.604(b) (2019). Nothing in that regulation suggests the underlying "guarantee" was calculated by reference to 3.452380952380952 times the $210 shift rate.

**B. This Court Should Reverse (or Vacate) and Remand.**

As set forth above, *Helix* and *Gentry* control not only the application of § 604(b), but also how and when § 602(a) applies. This intervening precedent confirms the district court got it wrong and erred in basing its "salary basis" determination (which it relied on to decertify the collective action) using the wrong legal standard. *Helix*, 598 U.S. at 52-56 (confirming § 602(a) "applies only to weekly-rate employees" and not workers, like Appellants, paid a "salary plus extras" who can meet the "salary basis" test only if

their "salary plus extras" plan complies with the requirements of § 604. *Cf.* ROA.9825–9827 (declining to apply **both** § 604(a)'s limitation on so-called "additional" pay **and** § 604(b)'s reasonable relationship test). Therefore, the lower court's ruling should be reversed and remanded for proceeding consistent with existing precedent.

Alternatively, because the district court did not have the benefit of this intervening Supreme Court authority when it issued its rulings on the merits or decertification, this Court could vacate and remand the district court's judgment for reconsideration in the first instance in light of *Helix* and *Gentry*. *See, e.g., Greinstein v. Granite Servs. Int'l Inc.*, No. 23-10781, 2024 WL 3771455, at *2 (5th Cir. Aug. 13, 2024) (reversing district court's pre-*Gentry* interpretation of § 602(a) and remanding for consideration of, *inter alia*, whether § 604(b) applied); *see also, United States v. Carbajal*, No. 20-40661, 2022 WL 963976, at *1 (5th Cir. Mar. 30, 2022) ("[B]ecause the district court did not have the benefit of intervening Supreme Court authority …, it should have an opportunity to reconsider in light of [that authority]."); *Castillo-Correa v. Barr*, 796 F. App'x 846, 847 (5th Cir. 2020) ("remand may be appropriate when the [district court's] decision has become unsustainable in light of an intervening change in binding precedent"); *Luke v. CPlace Forest Park SNF, L.L.C.*, 608 F. App'x 246 (5th Cir. 2015) (finding "the district should decide the matter under current law in the first instance" following the issuance of a Supreme Court opinion laying out the proper analysis for Title VII claims); *Elizondo v. Parks*, 254 F. App'x 329, 332 (5th Cir. 2007) ("Because *Garcetti* had not been decided at the time the district court made its ruling in this case,

the district court did not have the opportunity to decide [the issue]. We decline to make that determination in the first instance and therefore vacate the district court's order … and remand this case for reconsideration in light of *Garccetti*."); *Smith v. Cooper/T. Smith Corp.*, 886 F.2d 755, 756 (5th Cir. 1989) (remand mandated by intervening Supreme Court precedent that affected the court's interpretation of relevant regulations).

Doing so makes perfect sense. Appellate courts are generally courts of review—not courts of first impression. It is "elementary" that it is the role of the district court—not an appellate court—to make the initial findings of fact and conclusions of law, apply the law to the facts in the first instance, and exercise discretion as to the issues presented. *See Pullman-Standard v. Swint*, 456 U.S. 273, 291–92 (1982) (citing *DeMarco v. United States*, 415 U.S. 449, 450 (1974) ("[F]actfinding is the basic responsibility of district courts, rather than appellate courts, and…the Court of Appeals should not have resolved in the first instance this factual dispute which had not been considered by the District Court.")); *see also* 5A J. Moore & J. Lucas, Moore's Federal Practice § 52.06 [2] (1982) ("Where the trial court fails to make findings, or to find on a material issue, and an appeal is taken, the appellate court will normally vacate the judgment and remand the action for appropriate findings to be made").

Likewise, "[w]hen an appellate court discerns that a district court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings[.]" *Pullman-Standard*, 456 U.S. at 291. Indeed, "[w]hen a trial court has made a

fact finding upon an erroneous view of the law, the factual determination loses all vitality, requiring a remand." *N. Mississippi Commc'ns, Inc. v. Jones*, 951 F.2d 652, 657 (5th Cir. 1992). "It follows that when a district court's finding on such an ultimate fact is set aside for an error of law, the court of appeals is not relieved of the usual requirement of remanding for further proceedings to the tribunal charged with the task of factfinding in the first instance." *Pullman-Standard*, 456 U.S. at 293. And the maintenance of an FLSA collective action is an inherently "discretionary" decision, but the district court is obligated to make these discretionary decisions while applying the correct rule of law. *Klick v. Cenikor Found.*, 94 F.4th 362, 373–74 (5th Cir. 2024) (remanding to reconsider collective action status because "the district court applied the incorrect legal standard in assessing employee status"); *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 436, 439 (5th Cir. 2021).

Here, the Supreme Court issued *Helix* after the district court's decertification ruling. There can be no doubt *Helix* substantially impacted the application of § 602(a) and § 604(b) to Schlumberger's pay plan. As the district court noted, Schlumberger pay plan included both an alleged "salary" element **and** a day rate paid for any day they are present on a customer's rig." ROA.9825. The district court further conceded this additional day-rate compensation "generally counts for the bulk of each [Appellants'] total compensation."). ROA.9825. Nevertheless, the district court determined because an admittedly small portion of Appellants' weekly earnings came from "an annual salary that is not subject to reduction regardless of the numbers of hours or days worked"

Schlumberger met § 602(a)'s "requisite guaranteed minimum salary requirement" such that it believed applying § 604(b)'s reasonable relationship test was entirely unnecessary. ROA.9825-9827.

Given *Helix* and *Gentry*, we know the district court's interpretation of § 602(a) (and its refusal to analyze § 604 altogether) was based on an erroneous view of the law. *See Helix*, 598 U.S. at 55–56 (§ 604(b) applies to employees whose "earnings" include payments on a "daily … basis"). Respectfully, this Court specifically **rejected** the lower court's core finding, that "[s]o long as employees receive a minimum, predetermined, and guaranteed sum every week, … any [daily] compensation is permissible under § 604(a)." *Gentry*, 102 F.4th at 722.

Because the district court's summary judgment and decertification decisions are based on an erroneous view of the law—this Court should vacate and remand the matter "for further proceedings to permit the trial court to make the missing findings[.]" *Pullman-Standard*, 456 U.S. at 291.

### C. Regardless, the Statute of Limitations Should Be Tolled.

Schlumberger may argue (as it has in the past) that opt-in plaintiffs can *never* appeal a decertification decision. Apparently, Schlumberger thinks that if you join a collective action that is later decertified, and a judgment is entered dismissing you "without prejudice" but without tolling, that's just hard cheese.

While there is a Third Circuit case that suggests opt-in plaintiffs can never appeal a decertification decision, both the Ninth and Eleventh Circuit rejected the Third

Circuit's analysis. *Compare Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215 (3d Cir. 2016) *with Campbell v. City of Los Angeles*, 903 F.3d 1090, 1107 (9th Cir. 2018) ("We disagree [with the] Third Circuit's approach"); *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1279 (11th Cir. 2018) (opt-in plaintiffs can appeal a decertification decision after judgment was entered).

And the Third Circuit based its decision on the belief that "[w]hen the opt-in plaintiffs were dismissed without prejudice, they did not suffer an adverse judgment on the merits of any claim. They lost nothing but the ability to proceed in Halle's case." *Halle*, 842 F.3d at 230. However, the Eleventh Circuit explained why this can't be correct unless tolling is mandated. Without tolling, a dismissal without prejudice is often "tantamount to dismissing them with prejudice, as the applicable statute of limitations would probably bar them from refiling their claims." *Mickles*, 887 F.3d at 1280; *Gray v. Fid. Acceptance Corp.*, 634 F.2d 226, 227 (5th Cir. 1981) (when a district court dismisses without prejudice "after the statute of limitations had run, the dismissal is a final order"); *Atkins v. Propst*, No. 20-11008, 2022 WL 24504, at *1 (5th Cir. Jan. 3, 2022) ("A dismissal without prejudice should be treated as a dismissal with prejudice when a refiling of the claims would be time barred by the time of the dismissal.").

The default statute of limitations under the FLSA is just 2 years, with a maximum look-back period of 3 years where, as alleged here, the employer's violation is willful. 29 U.S.C. § 255(a). Therefore, all causes of action accruing prior to December 5, 2020 (under the default, 2-year statute) or December 5, 2019 (under the 3-year, willful statute)

would be eliminated in the absence of tolling. That matters here since many of the Appellants' claims accrued long before December 5, 2019. In fact, as far back as 2014, many Appellants were already former employees, and thus—while timely at the time of filing—were no longer accruing claims. *See, e.g.,* ROA.436–441 (employment ended prior to December 2014); ROA.451–454 (same). And, of course, many more Appellants became former employees during this litigation but before December of 2019. *See, e.g.,* ROA.7984–7985. (employment ended by March 2017). While these workers' causes of action were tolled while they were opt-in plaintiffs, 29 U.S.C. § 256(b), the district court's judgment did not provide for any tolling period to refile. ROA.10869. Thus, in the absence of tolling, the district court's judgment of dismissal may amount to dismissal with prejudice for many, if not all, Appellants.[6]

Many Courts of Appeals *mandate* tolling be granted to "decertified" plaintiffs to ensure the dismissal is, in fact, without prejudice. *See, e.g., Mickles*, 887 F.3d at 1280; *Lusardi v. Lechner*, 855 F.2d 1062, 1080 (3d Cir. 1988) (on mandamus, staying "order decertifying class" and requiring district court to grant "tolling of the statute of limitations on the opt-ins' individual claims to a date at least thirty days after entry of

---

[6] In addition, in the absence of tolling, the judgment could eliminate a large number of Appellants' causes of action. That's because it "is well settled that [a] separate cause of action for overtime compensation accrues at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation is claimed." *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1050 (5th Cir. 1973); *Singer v. City of Waco, Tex.*, 324 F.3d 813, 828 (5th Cir. 2003) (same); *Halferty v. Pulse Drug Co.*, 821 F.2d 261, 271 (5th Cir.), *opinion modified on reh'g,* 826 F.2d 2 (5th Cir. 1987) (same).

its order" if it concludes decertification is appropriate on remand). This Court should adopt the same, common-sense rule here.

## CONCLUSION

For these reasons, Appellants respectfully request this Court: (1) reverse (or vacate) the district court's summary judgment and decertification rulings; and (2) remand this matter to the district court for reconsideration in light of *Helix* and *Gentry* and trial.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: */s/ Rex Burch*
Richard J. (Rex) Burch
Texas State Bar No. 24001807
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
rburch@brucknerburch.com

Michael A. Josephson
Texas State Bar No. 24014780
JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, TX 77046
Tel: (713) 352-1100
mjosephson@mybackwages.com

Kenneth W. DeJean
Louisiana Bar Roll No. 4817
LAW OFFICES OF KENNETH W. DEJEAN
P.O. Box 4325
Lafayette, Louisiana 70502
Telephone: (337) 235-5294
kwdejean@kwdejean.com

**Attorneys for Plaintiffs-Appellants**

**CERTIFICATE OF SERVICE**

I served this document on January 27, 2026, via the Court's CM/ECF System in accordance with the Federal Rules of Civil Procedure and/or Federal Rules of Appellate Procedure on all parties of record.

*/s/ Rex Burch*
Richard J. (Rex) Burch

**CERTIFICATE OF COMPLIANCE WITH FRAP 32(A)**

This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 10,468 words, even including the parts of the Brief exempted under Fed. R. App. P. 32(f). This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief is prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Garamond font, a Roman typeface.

*/s/ Rex Burch*
Richard J. (Rex) Burch